1
2
3
4
5
6
7
8
9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10
11
12

| BITE TECH, INC. and i1 BIOMETRICS, INC., | CASE NO. C12-1267RSM |
|---|---|
| Plaintiffs, | ORDER ON DEFENDANT'S MOTION FOR PROTECTIVE ORDER AND TO MODIFY SUBPOENA |
| v. | |
| X2 IMPACT, INC., Defendant. | |

13
14
15
16
17
18

# I. INTRODUCTION

This matter is before the Court pursuant to Defendant's Fed. R. Civ. P. 26(c) motion for protective order on Plaintiffs' request for production of documents and third party subpoenas. Dkt. # 31. Pursuant to Fed. R. Civ. P. 45(c), Plaintiffs also move to modify one of the third party subpoenas issued by this Court. *Id.* For the reasons set forth below, Defendant's motion is GRANTED in part and DENIED in part.

19
20
21
22
23
24
25
26

1

## II. BACKGROUND

2

3          In May 2011, Bite Tech, Inc. ("Bite Tech") and X2 Impact, Inc. ("X2") entered into a

4     Technology License Agreement ("Agreement") that provided Bite Tech with an exclusive

5     worldwide license on X2's impact sensing technology.  Under the Agreement, Bite Tech was to

6     develop, market and manufacture an impact sensing mouthguard that would enable real-time

7     monitoring of impact forces for athletes, military troops and others at risk of concussions or

8     similar harms.  In January 2012, Bite Tech completed $2 million in advance royalty payments to

9     X2.  Then in March 2012, X2 sent Bite Tech a notice of termination alleging that Bite Tech was

10    insolvent.  The Agreement provides for rightful termination if Bite Tech becomes insolvent or

11    institutes bankruptcy proceedings.  Bite Tech has denied the allegations of insolvency and X2 has

12    declined to reimburse Bite Tech's $2 million royalty payment.  Consequently, Bite Tech and i1

      Biometrics, Inc.[1] (collectively "Plaintiffs") brought this breach of contract action against X2.

13
              In August 2012, Plaintiffs submitted requests for production of documents to X2, and X2

14    served timely written objections.  On October 24, 2012, parties' counsel conferred regarding the

15    requests and X2 stood by its objections to No. 16 and 17, maintaining that the requested

16    information is overly broad, confidential and proprietary.  Dkt. # 31, pp. 2-3.

17
              No. 16:  All documents relating to any or potential investment by any source of capital,

18    including but not limited to venture capital funds or firms, in X2.

19
              No. 17:  All documents relating to the License Agreement between X2 on the one hand

20    and any source of capital, including but not limited to venture capital funds or firms.  Dkt. # 33,

21    Ex. 1.

22

23

24    _____

          [1] Formerly BTMF Holding, Inc., i1 Biometrics, Inc. is the portion of Bite Tech's
25    business related to the mouthguards' development.  Dkt. # 29, 30.

26    ORDER ON DEFENDANT'S MOTION FOR
      PROTECTIVE ORDER AND TO MODIFY
      SUBPOENA - 2

Following the discovery conference, Plaintiffs notified X2 via email that they are serving subpoenas to Arrow Electronics, Inc. ("Arrow"), Kodiak Financial Group, LLC ("Kodiak") and Microsoft Corp. ("Microsoft"), which are third parties alleged of providing investments or financing to X2. The subpoena to Arrow was issued from the District of Colorado. The subpoena to Kodiak was issued from the Southern District of New York. The subpoena to Microsoft was issued from this Court.

On November 14, 2012, the Court entered a Stipulated Protective Order limiting the parties' disclosure of confidential information. Dkt. # 28. On November 20, 2012, parties' counsel held a second discovery conference to confer about the subpoena requests. The parties agreed to designate any third party materials produced under the Stipulated Protective Order, but were unable to resolve the issues concerning X2's financing and investments. Specifically, X2 disputes Plaintiffs' requests to Arrow Nos. 1-4, Kodiak Nos. 1-4 and 7, and Microsoft Nos. 1-3.

<u>Arrow, Kodiak and Microsoft Nos. 1-3</u>

1. All documents relating to any or potential investment in, or purchase of, X2.

2. All documents relating to financing you considered or actually provided to X2 including, but not limited to, any due diligence you did regarding X2.

3. All executed agreements relating to any financing you provided to X2, including but not limited to promissory notes. Dkt. # 33, Ex. 3A-C (emphasis omitted).

<u>Arrow and Kodiak No. 4</u>

4. All documents relating to any ownership interest you had, or currently have, in X2. Dkt. # 33, Ex. 3A, C (emphasis omitted).

<u>Kodiak No. 7</u>

7. All documents reflecting communications regarding any actual or potential investment in, or purchase of X2. Dkt. # 33, Ex. 3C (emphasis omitted).

ORDER ON DEFENDANT'S MOTION FOR
PROTECTIVE ORDER AND TO MODIFY
SUBPOENA - 3

X2 moves for: (1) a protective order restricting Plaintiffs' request for production No. 16 and 17; (2) a protective order on Plaintiffs' subpoena to Arrow, restricting production requests Nos. 1-4; (3) a protective order on Plaintiffs' subpoena to Kodiak, restricting production requests Nos. 1-4 and 7; and (4) a protective order and modification of Plaintiffs' subpoena to Microsoft, restricting production requests and/or deleting Nos. 1-3.

## III. DISCUSSION

### A.   Legal Standard

The Federal Rules of Civil Procedure allow for broad discovery. *See* Fed. R. Civ. P. 26(b)(1); *Shoen v. Shoen*, 5 F.3d 1289, 1292 (9th Cir. 1993). "Parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense. . ." Fed. R. Civ. P. 26(b)(1). Relevant information for purposes of discovery is information "reasonably calculated to lead to the discovery of admissible evidence." *Surfvivor Media Inc. v. Survivor Prods.*, 406 F.3d 625, 635 (9th Cir. 2005). District courts have broad discretion in determining relevancy for discovery purposes. *Id.* (citing *Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002); *see U.S. Fidelity and Guar. Co. v. Lee Investments L.L.C.*, 641 F.3d 1126, 1136 (9th Cir. 2011) ("District courts have wide latitude in controlling discovery, and [their] rulings will not be overturned in the absence of a clear abuse of discretion." (internal quotation and citations omitted)). A court may "issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). This includes limiting disclosure of trade secrets "or other confidential research, development or commercial information." Fed. R. Civ. P. 26(c)(1)(G). The party seeking the protective order must demonstrate good cause, specifying the particularized prejudice or harm that will result if it is not granted. *Phillips v. General Motors Co.*, 307 F.3d 1206, 1210-11 (9th Cir. 2002). When protective order disputes involve conflicting interests over confidential information, a balancing

test is appropriate. *See Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1469-70 (9th Cir. 1992).

## B.   Production Requests for No. 16 and 17

Plaintiffs' requests for production No. 16 and 17 seek documents "relating to" any sources or "potential" sources of third party financing or investment to X2.  X2 moves for a protective order, arguing that the requests are overbroad, irrelevant, and merely a pretext to elicit detailed confidential information.  Dkt. # 31, p. 7.  Plaintiffs argue that since the identities of X2's funding sources are publicly available online, the information is not confidential.  Dkt. # 34, pp. 13-14. They further argue that X2's claim is inapposite since the parties agreed to keep "highly confidential" materials from disclosure under the Stipulated Protective Order.  Dkt. # 34, p. 13. X2 maintains that the Stipulated Protective Order is insufficient, because it nonetheless results in Plaintiffs, as direct competitors, gaining access to competitively sensitive information.  Dkt. # 31, p. 7.

The Court must balance two competing interests.  On the one hand, X2 has shown good cause, alleging that disclosure of confidential investment sources to its competitors will result in harm to its business.  On the other hand, Plaintiffs are entitled to seek information that is relevant to their claim that X2's termination of the Agreement was pretextual and premised on a lack of investment opportunities while bound by the Agreement.  While some of X2's investment information may be publicly available, Plaintiffs' broad request for all actual and potential sources of capital includes confidential information as well.  The damaging effect of releasing this information to a competitor outweighs its relevance to the extent it reaches beyond the Agreement's scope and duration.  Nonetheless, financing information pertaining to the Agreement and the parties' respective obligations carries greater weight, as it is directly relevant to the Plaintiffs' claims and underlying litigation.

As such, the Court finds that Plaintiffs' request No. 16, which simply seeks all documents relating to any actual or potential sources of X2's capital, is overbroad on its face. The request is not limited in time or scope to the instant litigation. In contrast, No. 17 specifically seeks documents between X2 and any source of capital as it relates to the Agreement. The request is narrow in scope and does not seek information beyond the context of the parties' Agreement. Therefore, a protective order on No. 16 is GRANTED and No. 17 is DENIED.

## C.   Third Party Subpoenas

Typically only a subpoena's recipient has standing to challenge the subpoena in the issuing court. *See Daimler Truck N. Am. L.L.C. v. Younessi*, No. 08-5011, 2008 WL 2519845, at *1 (W.D. Wash. June 20, 2008) (citing Fed. R. Civ. P. 45(c)(2)(B)). However, a party may move to quash or modify third party subpoenas when its own privacy interests may be implicated. *Johnson v. U.S. Bancorp.*, No. 11-2010, 2012 WL 6726523, at *2 (W.D. Wash. Dec. 27, 2012) (citing *Koh v. S.C. Johnson & Son, Inc.*, No. 09-0927, 2011 WL 940227, at *2 (N.D. Cal. Feb. 18, 2011)). Parties are also permitted to seek a protective order from the presiding court in order to restrict the party seeking discovery from asserting certain requests from third parties. Fed. R. Civ. P. 26(c)(1); *see Becker v. Precor, Inc.*, No. 08-1755, 2009 WL 3013656, at *4 (W.D. Wash. Sep. 16, 2009). X2 moves to modify the Microsoft subpoena as it was issued from this Court, and also moves for a protective order on the Arrow, Kodiak and Microsoft subpoenas. X2 has demonstrated an interest in protecting confidential financing information from its competitor, and may accordingly bring forth the motion to modify Plaintiffs' Microsoft subpoena. X2's motion for a protective order on the Arrow, Kodiak and Microsoft subpoenas is also proper.

## 1. Arrow Subpoena Nos. 1-4

In its subpoena to Arrow, Plaintiffs seek documents relating to: (1) any actual or potential investments or purchase of X2, (2) any financing considered or provided to X2 such as due

ORDER ON DEFENDANT'S MOTION FOR
PROTECTIVE ORDER AND TO MODIFY
SUBPOENA - 6

diligence, (3) executed agreements of financing such as promissory notes, and (4) any ownership interest it had or currently has in X2.  X2 disputes these requests as being irrelevant to any of Plaintiffs' claims or defenses, serving only as a pretext to acquire competitively sensitive information and interfere with X2's business relations.  Dkt. # 31, p. 5.  Plaintiffs argue that the inquiry is relevant and that the requests are "narrowly time bound."  Dkt. # 34, p. 14.

For the reasons discussed above, X2 has demonstrated a legitimate interest in restricting disclosure of its financial arrangements from a competitor.  On the other hand, X2's funding information is highly relevant as it relates to the Agreement and the parties' joint efforts in the mouthguard's development.  Plaintiffs' scope of inquiry on Nos. 1-4, however, is overbroad on its face because it is not "narrowly time bound" to the Agreement.  This is further evidenced by Plaintiffs' remaining requests in the Arrow subpoena, specifying the production of documents as it relates to Bite Tech or the Agreement.  As such, X2's motion for a protective order restricting the production of documents requested in Nos. 1-4 of the Arrow subpoena is GRANTED.

**2. Kodiak Subpoena Nos. 1-4 and 7**

Plaintiffs' request on Nos. 1-4 in the Kodiak subpoena is identical to Nos. 1-4 in the Arrow subpoena.  X2 additionally disputes No. 7, which seeks "documents reflecting *communications* regarding any actual or potential investment in, or purchase of X2."  Dkt. # 33, Ex. 3C.  Plaintiffs emphasize that Kodiak's investment in X2 is public information that is readily found online. While news of the investment is publicly known, the details of the arrangement are confidential. As discussed above, the requests for Nos. 1-4 are overbroad because they reach beyond the context of the Agreement.  Moreover, No. 7 appears to be a duplicative request of No. 1, because "documents" as defined in the subpoena are to be construed in the broadest sense, which includes any materials evidencing "communications."  Dkt. # 33, Ex. 3C.  Therefore, X2's motion for a

ORDER ON DEFENDANT'S MOTION FOR
PROTECTIVE ORDER AND TO MODIFY
SUBPOENA - 7

1   protective order restricting the production of documents requested in Nos. 1-4 and 7 of the

2   Kodiak subpoena is GRANTED.

3   **3. Microsoft Subpoena Nos. 1-3**

4   X2's motion for a protective order or to modify Plaintiffs' Microsoft subpoena Nos. 1-3 is

5   identical to Nos.1-3 in the Arrow and Kodiak subpoenas.  For the same reasons, X2's motion for

6   a protective order restricting the production of documents requested in Nos. 1-3 of the Microsoft

7   subpoena is GRANTED.  As the protective order adequately addresses the issue, a separate order

8   quashing or modifying Nos.1-3 is not necessary in this case.

9                                     **IV. CONCLUSION**

10          Having reviewed the relevant pleadings, the declarations and exhibits attached thereto,

11   and the remainder of the record, the Court hereby finds and ORDERS:

12       (1) Defendant's Fed. R. Civ. P. 26(c) motion for a protective order on Plaintiffs' production

13              request No. 16 is GRANTED.

14       (2) Defendant's Fed. R. Civ. P. 26(c) motion for a protective order on Plaintiffs' production

15              request No. 17 is DENIED.

16       (3) Defendant's Fed. R. Civ. P. 26(c) motion for a protective order on Plaintiffs' subpoena to

17              Arrow Electronics, Inc. (Nos. 1-4) is GRANTED.

18
19       (4) Defendant's Fed. R. Civ. P. 26(c) motion for a protective order on Plaintiffs' subpoena to

20              Kodiak Financial Group, LLC (Nos. 1-4, 7) is GRANTED.

21       (5) Defendant's Fed. R. Civ. P. 26(c) motion for a protective order on Plaintiffs' subpoena to

22              Microsoft Corp. (Nos. 1-3) is GRANTED, and subpoena shall not be modified.

23       //

24       //

25

26   ORDER ON DEFENDANT'S MOTION FOR
     PROTECTIVE ORDER AND TO MODIFY
     SUBPOENA - 8

(6) The Clerk is directed to forward a copy of this Order to plaintiffs and to all counsel of

record.

Dated this 17th  day of January 2013.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE

ORDER ON DEFENDANT'S MOTION FOR
PROTECTIVE ORDER AND TO MODIFY
SUBPOENA - 9