UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

BITE TECH, INC. and i1 BIOMETRICS, INC.,

Plaintiffs,

v.

X2 IMPACT, INC.,

Defendant.

NO. 2:12-cv-01267 RSM

**X2 IMPACT'S SECOND AMENDED ANSWER AND COUNTERCLAIM**

## ANSWER

Defendant X2 Impact, Inc. ("X2"), by and through its attorneys of record, files the following Answer to plaintiffs' Complaint:

1.      In answer to paragraph 1, X2 admits that in May 2011 it entered into a Technology License Agreement ("Agreement") with Bite Tech, which speaks for itself. X2 further admits that the purpose of such Agreement was to provide for the development, marketing, and manufacturing of an impact sensing mouth guard for use by amateur and professional athletes, military and combat troops, and others at risk of concussion or similar head impact injuries. As to the remaining allegations of the paragraph, X2 denies each and every one and every inference to be drawn therefrom.



Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224 | Fax 206.583.0359

778665.01

2. In answer to paragraph 2, X2 admits that it received $2 million in advance royalty payments pursuant to the Agreement, that Bite Tech demanded the return of such advance royalties, and that X2 declined. As to the remaining allegations of the paragraph, X2 denies each and every one and every inference to be drawn therefrom.

3. In answer to paragraph 3, X2 denies each and every allegation contained therein and every inference to be drawn therefrom.

4. In answer to paragraph 4, X2 admits.

5. In answer to paragraph 5, X2 is without sufficient information regarding BTFM Holding, Inc. ("BTFM") to form a belief as to the truth or falsity of the statements made therein, and therefore denies same. X2 further states that the alleged assignment to BTFM, or any other event that leads BTFM to allege that it is a successor to Bite Tech in respect of X2, was made without notice to X2 and without X2's permission, is prohibited by the Agreement and is, therefore, an event of default.

6. In answer to paragraph 6, X2 admits.

7. In answer to paragraph 7, X2 admits.

8. In answer to paragraph 8, X2 admits.

9. In answer to paragraph 9, X2 admits that Bite Tech is in the business of developing and selling mouthwear products. As to the remaining allegations of the paragraph, X2 is without sufficient information to form a belief as to the truth or falsity thereof, and therefore denies same.

10. In answer to paragraph 10, X2 admits.

11. In answer to paragraph 11, X2 admits.

12. In answer to paragraph 12, X2 replies that the full scope of and limitations on the license are set forth in the Agreement, which speaks for itself. X2 denies that the recitals are an operative part of the Agreement.

X2 IMPACT'S SECOND AMENDED ANSWER AND
COUNTERCLAIM - 2
NO. 2:12-cv-01267 RSM

Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224 | Fax 206.583.0359

778665.01

13. In answer to paragraph 13, X2 states that the Agreement speaks for itself. X2 denies that advance royalty payments were specifically tied to "X2's anticipated contribution to the joint development agreement" as alleged.

14. In answer to paragraph 14, X2 denies each and every allegation contained therein and every inference to be drawn therefrom.

15. In answer to paragraph 15, X2 denies each and every allegation contained therein and every inference to be drawn therefrom.

16. In answer to paragraph 16, X2 admits.

17. In answer to paragraph 17, X2 denies each and every allegation contained therein and every inference to be drawn therefrom.

18. In answer to paragraph 18, X2 admits that by letter dated March 26, 2012, X2 sent Bite Tech notice of termination pursuant to Section 7.3.2 of the Agreement, which allows X2 to terminate if Bite Tech becomes insolvent. As to the remaining allegations of the paragraph, X2 denies each and every one and every inference to be drawn therefrom.

19. In answer to paragraph 19, X2 denies that it did not respond to Bite Tech and further states that it made repeated requests to Bite Tech to supply documentation demonstrating its solvency, which was never supplied.

20. In answer to paragraph 20, X2 denies each and every allegation contained therein and every inference to be drawn therefrom.

21. In answer to paragraph 21, X2 denies that Bite Tech was solvent when notice of termination was sent in March of 2012. As to the remaining allegations of the paragraph, X2 is without sufficient information to form a belief as to the truth or falsity thereof, and therefore denies same.

22. In answer to paragraph 22, X2 admits that Bite Tech disputes the validity of the termination and demanded the return of the $2 million, and that X2 has declined. X2

Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224 | Fax 206.583.0359

further states that Bite Tech has refused to provide any information regarding its solvency, despite repeated requests, and X2 denies that its termination of the Agreement was improper.

23. In answer to paragraph 23, X2 denies it has misused any of Bite Tech's intellectual property. If X2 was in possession of any intellectual property of Bite Tech, it was permissive pursuant to the terms of the Agreement.

24. In answer to paragraph 24, X2 realleges its answers to paragraphs 1 through 23 above.

25. In answer to paragraph 25, X2 admits.

26. In answer to paragraph 26, X2 admits.

27. In answer to paragraph 27, X2 denies each and every allegation contained therein and every inference to be drawn therefrom.

28. In answer to paragraph 28, X2 denies each and every allegation contained therein and every inference to be drawn therefrom.

29. In answer to paragraph 29, X2 denies each and every allegation contained therein and every inference to be drawn therefrom.

30. In answer to paragraph 30, X2 denies each and every allegation contained therein and every inference to be drawn therefrom.

31. In answer to paragraph 31, X2 realleges its answers to paragraphs 1 through 23 above.

32. In answer to paragraph 32, X2 states that the terms of the Agreement speak for themselves.

33. In answer to paragraph 33, X2 denies each and every allegation contained therein and every inference to be drawn therefrom.

34. In answer to paragraph 34, X2 denies each and every allegation contained therein and every inference to be drawn therefrom.

Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224 | Fax 206.583.0359

35.     In answer to paragraph 35, X2 denies each and every allegation contained therein and every inference to be drawn therefrom.

36.     In answer to paragraph 36, X2 denies each and every allegation contained therein and every inference to be drawn therefrom.

37.     In answer to paragraph 37, X2 realleges its answers to paragraphs 1 through 23 above.

38.     In answer to paragraph 38, X2 responds that the terms of the Agreement speak for themselves. In regard to the remaining allegations of the paragraph, X2 denies each and every one and every inference to be drawn therefrom.

39.     In answer to paragraph 39, X2 denies each and every allegation contained therein and every inference to be drawn therefrom.

40.     In answer to paragraph 40, X2 denies each and every allegation contained therein and every inference to be drawn therefrom.

41.     In answer to paragraph 41, X2 realleges its answers to paragraphs 1 through 23 above.

42.     In answer to paragraph 42, X2 denies each and every allegation contained therein and every inference to be drawn therefrom.

43.     In answer to paragraph 43, X2 denies each and every allegation contained therein and every inference to be drawn therefrom.

44.     In answer to paragraph 44, X2 denies each and every allegation contained therein and every inference to be drawn therefrom.

45.     In answer to paragraph 45, X2 denies each and every allegation contained therein and every inference to be drawn therefrom.

46.     In answer to paragraph 46, X2 denies each and every allegation contained therein and every inference to be drawn therefrom.

Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224  |  Fax 206.583.0359

47.     In answer to paragraph 47, X2 denies each and every allegation contained therein and every inference to be drawn therefrom.

48.     In answer to paragraph 48, X2 realleges its answers to paragraphs 1 through 47 above.

49.     In answer to paragraph 49, X2 admits Bite Tech made eight $250,000 monthly advance royalty payments totaling $2 million, as required by the Agreement. As to the remaining allegations of the paragraph, X2 is without sufficient information to form a belief as to what Bite Tech "believed," and therefore denies same.

50.     In answer to paragraph 50, X2 denies each and every allegation contained therein and every inference to be drawn therefrom.

51.     In answer to paragraph 51, X2 denies each and every allegation contained therein and every inference to be drawn therefrom.

52.     In answer to paragraph 52, X2 admits Bite Tech demanded return of the royalty payments and that X2 declined. As to the remaining allegations of the paragraph, X2 denies each and every one and every inference to be drawn therefrom.

53.     In answer to paragraph 53, X2 denies each and every allegation contained therein and every inference to be drawn therefrom.

54.     In answer to paragraph 54, X2 denies each and every allegation contained therein and every inference to be drawn therefrom.

55.     In answer to paragraph 55, X2 realleges its answers to paragraphs 1 through 54 above.

56.     In answer to paragraph 56, X2 denies each and every allegation contained therein and every inference to be drawn therefrom.

57.     In answer to paragraph 57, X2 denies each and every allegation contained therein and every inference to be drawn therefrom.

Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224  |  Fax 206.583.0359

58.     In answer to paragraph 58, X2 denies each and every allegation contained therein and every inference to be drawn therefrom.

59.     In answer to paragraph 59, X2 denies each and every allegation contained therein and every inference to be drawn therefrom.

60.     In answer to paragraph 60, X2 denies each and every allegation contained therein and every inference to be drawn therefrom.

61.     In answer to paragraph 61, X2 realleges its answers to paragraphs 1 through 60 above.

62.     In answer to paragraph 62, X2 denies each and every allegation contained therein and every inference to be drawn therefrom.

63.     In answer to paragraph 63, X2 denies each and every allegation contained therein and every inference to be drawn therefrom.

64.     In answer to paragraph 64, X2 denies each and every allegation contained therein and every inference to be drawn therefrom.

65.     In answer to paragraph 65, X2 denies each and every allegation contained therein and every inference to be drawn therefrom. X2 further alleges that plaintiffs' claim of misappropriation is made in bad faith.

66.     In answer to paragraph 66, X2 joins in plaintiffs' demand for a trial by jury on all issues so triable.

## AFFIRMATIVE DEFENSES

In further answer to plaintiffs' Complaint and by way of AFFIRMATIVE DEFENSE, defendant X2 alleges as follows:

1.      Plaintiffs have failed to state a claim upon which relief can be granted;

2.      Plaintiffs' Claim IV – Breach of Special Relationship, Claim V – Conversion, Claim VI – Common Law Restitution and Unjust Enrichment, and Claim VII – Trade Secret

RS   Ryan, Swanson & Cleveland, PLLC
     1201 Third Avenue, Suite 3400
     Seattle, WA 98101-3034
     206.464.4224  |  Fax 206.583.0359

Misappropriation do not arise from tort or statutory duties independent of the parties' contract, and therefore violate the independent duty doctrine set forth in *Eastwood v. Horse Harbor Foundation, Inc.*, 170 Wn.2d 380, 241 P.3d 1256 (2010).

3. Plaintiffs' Claim VI for Common Law Restitution and Unjust Enrichment sets forth remedies and not a cause of action. To the extent these remedies are based upon a claim of implied contract, such a claim is not available when there is a written contract between the parties covering the subject matter at issue.

4. Any trade secrets Plaintiff Bite Tech may have disclosed to X2 were disclosed pursuant to the Agreement and any use of the same by X2 was permitted.

5. Plaintiffs' claim of a "special relationship" is contrary to Section 8.4 of the Agreement which provides that the parties are not agents or representatives of each other, or joint venturers or partners for any purpose, that neither party is responsible for the acts or omissions of the other, and that neither party has the right to speak for or bind the other.

6. Plaintiffs' alleged trade secrets do not meet the requirements of a protectable trade secret under RCW 19.108.

7. Plaintiffs' claims are barred by the Plaintiff's own acts of breach, including but not limited to insolvency, and/or the doctrine of unclean hands.

8. X2 is entitled to the affirmative defense of offset against any claims Plaintiffs may establish.

9. Plaintiff i1 Biometrics, Inc., formerly known as BTFM Holding, Inc., is not an authorized assignee of Bite Tech pursuant to Section 8.8 of the Technology License Agreement as X2 did not consent to such assignment in writing. Accordingly, i1 Biometrics, Inc., formerly known as BTFM Holding, Inc. has no standing or legal right to assert claims against X2, and should be dismissed as a party plaintiff to this lawsuit.

Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224 | Fax 206.583.0359

778665.01

# COUNTERCLAIM

In further answer to plaintiffs' Complaint and by way of COUNTERCLAIM, X2 alleges as follows:

## Parties

1.     Counter-plaintiff X2 Impact, Inc. ("X2") is a Washington corporation with its principal place of business in Seattle, King County, Washington. All fees and taxes are paid and current.

2.     Counter-defendant Bite Tech, Inc. ("Bite Tech") is a Minnesota corporation with its principal place of business in Greenwich, Connecticut.

3.     Counter-defendant i1 Biometrics, Inc., formerly known as BTFM Holding, Inc. ("i1") represents itself to be a Delaware corporation with its principal place of business in Greenwich, Connecticut, and the successor to the portion of Bite Tech's business that related to the development of the BTX2 mouthguard and Bite Tech's relationship with X2.

## Jurisdiction and Venue

4.     This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332 as there is complete diversity among the parties and the amount in controversy exceeds $75,000.

5.     This Court has personal jurisdiction over Bite Tech and i1 as those entities submitted themselves to the jurisdiction of this Court by filing their Complaint. Bite Tech also contractually agreed to jurisdiction in Washington State.

6.     Venue is proper pursuant to 28 U.S.C. § 1391.

## General Allegations

7.     X2 is in the business of developing and marketing products which embed high performance acceleration and rotation sensors in sport-specific gear to combat sports-related brain injuries. For helmeted sports, such as football, X2 provides custom fitted or boil-and-

Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224  |  Fax 206.583.0359

bite protective mouthguards containing sensor modules which are capable of transmitting real time information to coaches, trainers and parents.

8.    The information gathered by the X2 sensor modules is transmitted by proprietary wireless protocol to the X2 access point located at the sideline, then via GSM up to a secure internet database. Access to the player information can be transmitted to authorized mobile phones at the field of play or anywhere in the world. The X2 system notifies athletic trainers, coaches, parents and team physicians in real time about impacts to players' heads, and provides a suite of tools supporting athlete assessment in bench vs. play decisions, recovery and safe return-to-play protocols.

9.    In late 2010, X2 began discussing possible business arrangements with Bite Tech to develop a BTX2 mouthguard incorporating X2's sensor modules in a Bite Tech mouthguard. During a meeting in New York in December 2010, Bite Tech's CEO Lawrence Calcano told X2's CEO Christoph Mack that Bite Tech had annual sales in excess of $40,000,000, that it had strong penetration in the mouthguard and sports equipment market, and that it had the financial capability to bring X2's mouthguard-based products to market. Calcano also stated that Bite Tech had a strategic alliance and a close contractual relationship with Under Armour Inc. ("Under Armour") that would allow Bite Tech to market X2's technology using the Under Armour brand name and distribute it using the same channels Under Armour used for its own products. Upon information and belief, these statements were false at the time made and Calcano knew them to be false. X2 relied upon Bite Tech's representations.

10.    As of May 25, 2011, X2 and Bite Tech entered into a Technology License Agreement (the "Agreement") under which X2 granted to Bite Tech "a worldwide, exclusive license under all of the Patent Rights and Technology Rights to make, have made, use, import, export, distribute, market , promote and otherwise offer for sale and sell Products . . ." § 2.1.

Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224 | Fax 206.583.0359

778665.01

"Product" is defined in the Agreement to mean "any and all mouthguard based head impact sensing or monitoring system products for sports, military or medical purposes" incorporating X2's technology. § 1.20.

   11.   The Agreement contains the following provisions pertinent to X2's claims:

     a.   X2 was to provide Bite Tech with assistance as reasonably requested by Bite Tech "and not requiring [X2 to expend] any substantial out-of-pocket payment to third parties" to enable Bite Tech to exploit the licenses. § 2.2.

     b.   The Parties were to collaborate on the design and functionality of Products. Any joint inventions were to be jointly owned. § 2.3.1.

     c.   The Parties were to use commercially reasonable efforts to research, develop, clinically test, manufacture and commercialize the Products; however, X2 "shall have no obligation in respect of payment relating to any manufacturing and commercialization, and [Bite Tech] shall have no obligation in respect to payment relating to research and development."

     d.   As partial consideration for the licenses, Bite Tech was required to pay X2 an advance royalty of $2,000,000 in eight monthly installments of $250,000. § 3.1.1. X2 was also entitled to be paid a 50 percent royalty on all Product Income on a quarterly basis. § 3.1.2. There is no provision requiring repayment in the event of termination.

     e.   Section 6.1 addresses the treatment of Confidential Information, including, but not limited to, trade secrets. Each party is required to maintain the Confidential Information of the other in confidence and not divulge, disclose or otherwise communicate Confidential

Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224 | Fax 206.583.0359

777665.01

Information to others, or use it for any purpose, except pursuant to, and in order to carry out, the terms and objectives of the Agreement. The confidentiality obligations in Article 6 survive and continue to be enforceable notwithstanding any termination of the Agreement. § 7.4. In addition, if there was termination for breach under § 7.2, each party was to return confidential information to the other. § 7.4.

f.    Section 7.3.2 provides, "Licensor [X2] may terminate this Agreement immediately by notice to Licensee, if Licensee becomes insolvent . . . ." There is no cure period.

g.    Section 8.8 provides that no party to the Agreement may assign its rights or obligations without the prior written consent of the other party unless in connection with the sale of all or substantially all of the business or assets of the assigning party.

h.    Section 8.1 provides that in any action arising out of the Agreement, the prevailing party shall be entitled to recover its costs and reasonable attorneys' fees.

12.    In June of 2011, after making repeated requests to Bite Tech for revenue documentation which was never provided, the Executive Vice President for Marketing of Bite Tech, Bob Molhoek, told Rich Able, X2's Co-Founder, at a meeting in New Orleans that Bite Tech was on track to do $20,000,000 in sales in 2011. This was approximately 50 percent of the sales revenue that had been represented to X2 previously. Upon information and belief, X2 alleges that even this much-reduced estimate was a misrepresentation of actual revenue, was inaccurate and known to be inaccurate when made, and was made with the intent to deceive X2.

RS    Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224  |  Fax 206.583.0359

13.     Shortly after entering into the Technology License Agreement, Bite Tech informed X2 that it could not announce the rollout of a mouthguard incorporating X2's technology by Under Armour because Under Armour wanted to control the public relations and marketing. Bite Tech had originally informed X2 that an announcement would be made in June, then July, and later August. Similarly, the launch of the product with the participation or imprimatur of Under Armour was repeatedly delayed. X2 eventually learned that launch had been cancelled. Ultimately, no X2 related products were ever sold to, or distributed by, Under Armour, contrary to Bite Tech's repeated representations to X2.

14.     Under the Agreement, Bite Tech was responsible for all costs associated with manufacturing and commercializing mouthguards and related equipment incorporating X2's technology. Notwithstanding this requirement, X2 was forced to pay for costs allocated to Bite Tech under the Agreement because Bite Tech was unable to perform financially and organizationally. These costs included, but are not limited to, the costs of physical products, prototypes, tooling, travel, deployments, plastics, metal insert contacts, tooling modifications, test fixtures, software required for manufacturing, the payment for revisions to injection mold tooling and the components made therefrom, and costs associated with the aborted Under Armour deployment.

15.     By February of 2012, X2 was concerned with the lack of progress in bringing its products to market, and with the financial ability of Bite Tech to meet its contractual obligations and to remain viable as a company. As of the end of 2011, no products were available for purchase, and no sales had been made. At a meeting between Mack and Calcano in Seattle in early March, 2012, Calcano disclosed that Bite Tech's gross sales for 2011 were only $6,100,000. Calcano also admitted that Bite Tech was required to buy back unsold product from Under Armour worth millions of dollars.

Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224 | Fax 206.583.0359

778665.01

16.    In addition to Bite Tech's failure to fully fund the manufacture and commercialization of the Products, and to hire the personnel needed to complete such tasks, Bite Tech took other actions which evidenced its financial instability. These actions included, but were not limited to, laying off a large number of employees, closing facilities in Florida, Minnesota and Canada, and failing to make timely payments on its obligations in the ordinary course. Key employees also left Bite Tech of their own accord. X2 also learned, and therefore alleges, that the amount of Bite Tech's debts exceeded the value of its assets.

17.    By letter dated March 12, 2012, X2 gave notice to Bite Tech that it was terminating the Agreement pursuant to Section 7.3.2 because Bite Tech was insolvent, i.e., it was no longer able to pay its debts in the ordinary course of business as they became due, and/or its liabilities exceeded its assets. Although Bite Tech denied it was insolvent, Bite Tech has refused repeated requests to provide any information demonstrating that it is solvent as claimed.

18.    After termination of the Agreement, Bite Tech continued to use X2's name and mark and to advertise X2's technology in its marketing materials.  Bite Tech and/or Calcano also contacted various businesses or institutions with whom X2 had business relationships or expectancies, including Microsoft, Stanford University, Arrow Electronics and Analog Devices, Inc.  Calcano demanded that Arrow Electronics cease doing business with X2 in a phone call to James Dodd.  Analog Devices, an important supplier to X2, refused to provide ADXL377 oral based concussive indicators to X2 on April 20, 2012, until there was a resolution between X2 and Bite Tech.  Upon information and belief, X2 alleges that Analog Devices withheld this product at Calcano's request.

19.    Bite Tech hired Jed McCann, X2's former Director of Product Development, to work for Bite Tech, in violation of his employment and noncompetition agreement.  Upon information and belief, X2 alleges that Bite Tech knew of such agreements prior to employing

Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224  |  Fax 206.583.0359

McCann. X2 learned from another former employee, Rob Snook, that Calcano contacted him and other X2 employees after termination of the Agreement. Whether other X2 employees were ultimately hired by Bite Tech, or left X2 as a result of Calcano's contact, is currently unknown by X2.

20.     During the term of the Agreement and subject to the Agreement's confidentiality provisions, X2 disclosed trade secrets to Bite Tech regarding X2's technology, research and development, future products, business plans and business partners. After termination of the Agreement, Bite Tech disclosed to i1, and Bite Tech and i1 have used, X2's Confidential Information, including its trade secrets in violation of the Agreement and applicable terms of confidentiality. Bite Tech's disclosure and Bite Tech's and i1's use of X2's Confidential Information and trade secrets is without X2's consent and in violation of Section 6.1 of the Agreement and applicable law.

21.     Bite Tech's actions are in breach of the Agreement and Bite Tech's and i1's actions are in breach of common law and statutory obligations and have damaged X2 in an amount to be proven at trial.

## Claim I – Breach of Contract

22.     X2 realleges the allegations set forth in paragraphs 1 - 21 above.

23.     Section 2.3.3 of the Agreement provides that the parties will use commercially reasonable efforts to research, develop, clinically test, manufacture and commercialize the "Products" as that term is defined in the Agreement. The obligation to pay all amounts relating to any manufacturing and commercialization of the Products is specifically allocated to Bite Tech.

24.     Bite Tech failed to use commercially reasonable efforts to manufacture and commercialize the Products in breach of its obligations under the Agreement. Without limitation, Bite Tech failed to pay for manufacturing, tooling, software, equipment,

Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224 | Fax 206.583.0359

prototypes, deployment, and sales and marketing costs which were necessary to bring the Products to market and commercialize them successfully.

25. Section 2.3.3 allocates to Bite Tech all costs associated with the manufacture and commercialization of the Products. Notwithstanding such allocation, Bite Tech failed to pay for costs of manufacture and commercialization, forcing X2 to pay for such costs. Such failure to pay by Bite Tech was in breach of the Agreement, and has damaged X2 in an amount to be proven at trial.

26. Section 3.2.4 of the Agreement provides that Bite Tech shall use commercially reasonable efforts to obtain the necessary consents to disclose to X2 the terms of Bite Tech's agreements with Under Armour, or any affiliate thereof, that are or may become relevant for purposes of Product Income. Bite Tech failed to make such efforts.

27. X2 repeatedly requested that Bite Tech provide information regarding its relationship with Under Armour as it related to the marketing of Products including X2's technology. Bite Tech consistently refused to provide such information, instead providing general and false assurances that it had a strong relationship with Under Armour, and was working toward a joint rollout product incorporating X2's technology.

28. Contrary to the representations made by Bite Tech, X2 learned that Under Armour had large inventories of Bite Tech products it was unable to sell, that Bite Tech had the obligation to buy back such inventories, that Under Armour had not agreed to enter into further ventures with Bite Tech, including the proposed venture incorporating X2's technology, and that Under Armour at all relevant times regarded Bite Tech with disfavor, contrary to Bite Tech's representations to X2.

29. Bite Tech's failure to use commercially reasonable efforts to gain permission to disclose the terms of the Under Armour/Bite Tech agreements, and/or Bite Tech's failure to

778665.01

Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224 | Fax 206.583.0359

disclose the problems with its relationship with Under Armour was in breach of the parties' Agreement and has damaged X2 in an amount to be proven at trial.

30.     i1 claims to be the "successor to the portion of Bite Tech's business that related to the development of the BTX2 and the relationship with X2." Complaint ¶ 5. Such an assignment is in breach of Section 8.8, which provides that no party may assign its rights or obligations without prior written consent of the other party. No such consent was requested or given. Accordingly, such assignment is in breach of the Agreement.

31.     Bite Tech continues to use, advertise and promote X2's technology as its own, despite the terminations of the Agreement and any license thereunder. Such continued use and/or promotion of X2's technology after termination is in breach of the Agreement.

32.     The foregoing acts of breach have damaged X2 in an amount to be proven at trial, but which exceeds $75,000.

### Claim II – Breach of the Duty of Good Faith

33.     X2 realleges the allegations set forth in paragraphs 1 - 32 above.

34.     Bite Tech owed X2 a duty of good faith and fair dealing in regard to the performance of its obligations under the Agreement and to allow X2 to gain the full benefit of the contract.

35.     Bite Tech continually withheld or misrepresented information to X2 which it had a duty to disclose.   Such misrepresentations include, but are not limited to, misrepresentations regarding Bite Tech's financial strength, its annual sales revenue, its ability to perform its obligations under the Agreement, the status of its business relationship with Under Armour, its severe internal organizational issues, and its insolvency. Such failure to disclose and/or misrepresentation have damaged X2 in an amount to be proven at trial.

### Claim III – Misrepresentation/Fraudulent Inducement

36.     X2 realleges the allegations set forth in paragraphs 1 - 35 above.

RS   Ryan, Swanson & Cleveland, PLLC
     1201 Third Avenue, Suite 3400
     Seattle, WA 98101-3034
     206.464.4224  |  Fax 206.583.0359

37.     Bite Tech had a duty to disclose information which would have been significant to X2 in making its decision to contract with Bite Tech. Bite Tech also had a continuing obligation to provide truthful and material information to X2 material to the parties' ongoing business relationship. Such information includes, but is not limited to, the following: information about Bite Tech's financial situation; its gross sales; its deteriorating relationship with, and obligations to, Under Armour; its inability to pay for the costs to commercialize and manufacture Product; and its inability to perform its obligations under the Agreement.

38.     Bite Tech affirmatively misrepresented its financial worth and resources, its annual sales revenue, its commercial prospects and its relationship with Under Armour in an attempt to induce X2 to enter into the Agreement with Bite Tech and grant it a license for X2's technology. Such representations and/or failure to disclose were false or misleading, and known to be false or misleading at the time they were made. Bite Tech made such representations with the intention that X2 rely upon them, and X2 did justifiably rely upon them, to its detriment.

39.     Alternatively, Bite Tech supplied such false information to X2 to induce a business transactions and upon which X2 justifiably relied. Such reliance was reasonable under the circumstances and the false information proximately caused damage to X2. Bite Tech's failure to disclose is equivalent to an affirmative false statement.

40.     Such misrepresentations and/or failure to disclose were further made to induce X2 into contracting with Bite Tech and granting it a license in its technology and products.

41.     Such acts of misrepresentation and/or fraudulent inducement have damaged X2 in an amount to be proven at trial.

### Claims IV – Trade Secret Misappropriation

42.     X2 realleges the allegations set forth in paragraphs 1 - 41 above.

Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224 | Fax 206.583.0359

43.     In furtherance of its obligations under the Agreement, X2 disclosed trade secrets to Bite Tech regarding its impact sensing technology, research and development, engineering drawings, future products, business plans and business partners. Such information constitutes trade secrets protected by the Washington Uniform Trade Secrets Act, RCW 19.108. These trade secrets derive independent economic value because the public and other persons do not generally know such information, and X2's competitors may obtain economic value from the use or disclosure of the secrets.

44.     Bite Tech misappropriated X2's trade secrets by disclosing them to i1 without X2's authorization or consent and at a time when Bite Tech knew, or had reason to know, that Bite Tech's knowledge of X2's trade secrets was acquired under circumstances giving rise to a duty by Bite Tech to maintain the secrecy of the trade secrets and to restrict or limit the use of the trade secrets as provided in the Agreement. Bite Tech's disclosure of X2's trade secrets to i1 was committed by improper means and in breach of its obligations under the Agreement to maintain their secrecy. *See* Agreement §§ 6.1, 7.4. i1 misappropriated X2's trade secrets by acquiring them from Bite Tech with knowledge, or reason to know, that the trade secrets were acquired by improper means and that Bite Tech had a duty to maintain their secrecy and limit their use. Misappropriation occurs when trade secrets of another are disclosed and/or acquired under such circumstances and following the termination of an applicable license or agreement. *See, e.g.*, RCW 19.108.010(2); *Boeing Co. v. Sierracin Corp.*, 108 Wn.2d 38, 738 P.2d 665 (1987); *Petters v. Williamson & Assocs., Inc.*, 151 Wn. App. 154, 210 P.3d 1048 (2009) (finding misappropriation where technology transferred to a subsidiary company without authorization).

45.     Bite Tech and i1 further misappropriated X2's trade secrets by using X2's trade secrets obtained by Bite Tech prior to termination of the Agreement to make, manufacture, promote, market, offer for sale, and/or sell impact sensing mouth-guards,

Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224 | Fax 206.583.0359

778665.01

software, sideline assessment applications, assessment tools, base stations, charging stations, field kits, and components of an "Impact Intelligence System" described and promoted by i1 on its website http://i1biometrics.com.[1]  Neither Bite Tech nor i1 developed or engineered such components of the described Impact Intelligence System independently.  Bite Tech had no impact sensing technology or "know how" of its own prior to entering into the Agreement with X2.  The components of the Impact Intelligence System promoted by i1 and/or Bite Tech have been made, manufactured, promoted, marketed and/or sold using X2's trade secrets and "know how," and/or such components were based upon and substantially derived from trade secret information of X2. i1 is using X2's trade secrets without X2's consent, and with knowledge, or reason to know, that X2's trade secrets were acquired from Bite Tech in breach of the Agreement and by improper means.  There is substantial overlap and/or sharing of officers and employees between Bite Tech and i1, including, but not limited to, CEO Lawrence Calcano, and Executive Vice President of Manufacturing Brian Ronald.

46.     Bite Tech's and/or i1's disclosure and use of X2's trade secrets for their benefit is in violation of the Washington Uniform Trade Secrets Act, RCW 19.108.010, et seq.

47.     Bite Tech's and/or i1's violations have caused and will continue to cause X2 irreparable harm. Pursuant to RCW 19.108.020, X2 is entitled to preliminary and permanent injunctive relief to enjoin Bite Tech and/or i1 from further acquiring, disclosing or using X2' trade secrets.

48.     Bite Tech's and/or i1's conduct has and will continue to damage X2 in an amount which is not presently calculable. Pursuant to RCW 19.108.030(1), X2 is entitled to

---

[1] Bite Tech's disclosure to i1 and i1's extensive use of X2's Confidential Information, including trade secrets, is apparent from information available on i1's website.  As examples, the linear impactor and head form shown in video on i1's website are exact copies of X2's designs. The images depicted of impact-sensing mouthguards are exact images provided by X2 of mouthguards designed and developed by X2, with only the logo changed.  The system approach and management software illustrated on i1's website are copies of X2's.

RS| Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224 | Fax 206.583.0359

778665.01

compensatory damages for the misappropriated trade secrets and also is entitled to the unjust enrichment resulting from the misappropriation.

49.     Bite Tech's and/or i1's actions were and are willful and malicious. X2 therefore is entitled to exemplary damages, pursuant to RCW 19.108.030(2).

50.     X2 is entitled to recover its attorneys' fee, reasonable costs and disbursements incurred herein pursuant to RCW 19.108.040.

### Claim V – Tortious Interference

51.     X2 realleges the allegations set forth in paragraphs 1 - 50 above.

52.     X2 has existing and prospective economic and/or contractual relations with current and former customers, including but not limited to sports teams who either currently use X2 products or intend to use such products when they are commercially available, and current and/or former employees.

53.     Bite Tech and/or i1 and their agents knew of X2's existing and prospective economic relations and intentionally interfered with those existing and prospective economic relations by contacting X2's customers and advertising that Bite Tech owned and/or controlled X2's technology.

54.     Bite Tech and/or i1 have interfered with X2's contractual relations with former employees by inducing them to work for Bite Tech and/or i1 on projects intended to employ X2's technology, to disclose X2's trade secrets, to breach the terms of their employment agreements with X2 and/or to compete with X2 in violation of their employment agreements.

55.     Bite Tech and/or i1 and their agents used improper means to interfere with X2's existing and prospective economic relations for improper purposes, including: (a) inducing breach of contract by X2's employees; (b) inducing breach of X2's confidentiality agreements by X2's employees; (c) misappropriating X2's trade secrets; and

Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224 | Fax 206.583.0359

778665.01

(d) representing to X2's customers and/or potential customers and others that Bite Tech and/or i1 owned and/or controlled X2's technology.

56. As a result of the improper interference alleged above, X2 has suffered significant damages. Because the damages are continuing to accrue, the final amount is not presently calculable.

57. Bite Tech's and/or i1's actions have caused and will continue to cause X2 irreparable harm. X2 is entitled to preliminary and permanent injunctive relief to enjoin Bite Tech's and/or i1's activities.

58. X2 is entitled to compensation for the damages to its existing and prospective economic relations in an amount to be determined at trial.

## Claim VI - Federal Trademark Infringement

59. X2 realleges the allegations set forth in paragraphs 1 - 58 above.

60. "X2" is a federally-registered trademark owned by X2 Impact Inc.

61. X2 is entitled to a presumption of the validity of its trademark and its exclusive rights associated with such mark.

62. Federally-registered trademarks are protected under 15 U.S.C. § 1114(1), which provides:

Any person who shall, without the consent of the registrant —

(a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive; or

(b) reproduce, counterfeit, copy, or colorably imitate a registered mark and apply such reproduction, counterfeit, copy, or colorable imitation to labels, signs, prints, packages, wrappers, receptacles or advertisements intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, or advertising of goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive, shall be liable in a civil action by the registrant for the remedies hereinafter provided . . . .

Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224 | Fax 206.583.0359

63. 15 U.S.C. § 1117(a) provides that a plaintiff may recover the defendant's profits, plaintiff's damages, costs and attorneys' fees for violation of any right of the registrant of a registered mark, a violation under 15 U.S.C. § 1125(a) or (d), or a willful violation under 15 U.S.C. § 1125(c). Furthermore, 15 U.S.C. § 1117(b) provides that the Court shall, unless it finds extenuating circumstances, enter judgment for three times such profits or damages, whichever is greater, together with reasonable attorneys' fees, in the case of any intentional violation of 15 U.S.C. § 1114(1)(a).

64. Section 43(a)(1) of the Lanham Act, 15 U.S.C. § 1125, provides:

> Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which — (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

65. Bite Tech and/or i1 are using or have used the X2's trademark in connection with the offering of products and services that are substantially similar, if not identical, to X2's products and services. Such use is likely to cause, and has caused, confusion as to the affiliation, connection, or association of Bite Tech and/or i1 with X2's products, technology and business, and as to the nature, characteristics, qualities, origin, sponsorship, or approval by X2 of the products and services offered by Bite Tech and/or i1.

66. Bite Tech and/or i1 have used and continue to use "X2" knowingly, intentionally, and in bad faith, despite X2's' prior and superior rights, and with the willful and calculated intent of causing confusion and of trading unlawfully on X2's goodwill and reputation. For example, following termination of the Agreement, Bite Tech and/or i1 have used or are using the mark "X2" on the web site, www.bitetech.com, in a brochure available

Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224 | Fax 206.583.0359

to the public, on Facebook.com and on a web site, www.BTX2Impact.com, which redirects the public to Bite Tech's web site.

67.    Bite Tech's and/or i1's's use of "X2" constitutes false designation of origin, false description, and false and misleading misrepresentation likely to cause confusion, or mistake, or to deceive consumers as to the affiliation, connection, or association of X2 with Bite Tech and/or i1, or as to the nature, characteristics, qualities, origin, sponsorship, or approval of Bite Tech's and/or i1's products, services and business by X2, and is therefore in violation of the Lanham Act, 15 U.S.C. § 1051, et seq.

68.    As a direct and proximate result of Bite Tech's and/or i1's unlawful activities, X2 has suffered damages in an amount to be proven at trial. Bite Tech's conduct has caused and will continue to cause irreparable injury to X2 and to the goodwill associated with the "X2" trademark. Because Bite Tech's and/or i1's conduct is knowing, intentional, and done in bad faith, X2's losses should be trebled pursuant to 15 U.S.C. §1117. X2 will continue to be irreparably injured unless and until such conduct is permanently enjoined by this Court.

### Claim VII – Breach of the Washington Consumer Protection Act

69.    X2 realleges the allegations set forth in paragraphs 1 - 68 above.

70.    Bite Tech and/or i1 have engaged in deceptive acts and practices and committed unfair acts in the conduct of trade and/or commerce that have an impact on the public interest and which have directly and proximately caused injury to X2 in violation of the Washington Consumer Protection Act, RCW 19.86.

71.    At the time of this pleading, Bite Tech and/or i1 are falsely representing to the public that they own X2's technology and that research and development conducted by X2 is attributable to Bite Tech and/or i1.

72.    The web site, www.bitetech.com, misleadingly advertises to the public an "Impact Intelligence System," the electronics and software for which are based entirely upon

RS Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224 | Fax 206.583.0359

X2's technology. Bite Tech and/or i1 claim this system "is the first of its kind" with the impact sensing mouthguard transmitting data and information "via a proprietary wireless protocol to a base station." The "proprietary wireless protocol" and all the electronics depicted, as well as the software and functionality described on the web site, are technology owned by X2 and not Bite Tech or i1 as represented.

73.    The web site, www.bitetech.com, falsely claims that Bite Tech conducted the research and development for the Impact Intelligence System. All research and development was conducted by X2.

74.    The Bite Tech web site falsely claims the impact sensing mouthguard system will be available for purchase in 2012 and solicits customers to preorder and/or register for product updates. Such false representations by Bite Tech and/or i1 are or have the capacity to mislead and diverting customers from X2 causing injury and/or damage to X2.

75.    The Bite Tech web site uses the "X2" and "X2 Impact" trademarks in violation of X2's rights as sole owner of the marks. As of the time of this pleading, Bite Tech and/or i1 are using X2's mark both on its web site and in a brochure which can be downloaded by the public. Bite Tech and/or i1 also maintain a web site, www.BTX2Impact.com, which incorporates X2's name and mark and redirects users to Bite Tech's website, www.bitetech.com.

76.    Bite Tech and/or i1 maintain a Facebook page on the internet which misrepresents X2's technology to be Bite Tech's and/or i1's own, which uses the X2 mark without permission and which solicits sales based upon X2's technology, software, research and relationship with major sports programs such as Stanford. Such representations are false, are intended to, or have the capacity to, deceive the public, and to divert customers from X2 to Bite Tech and/or i1 damaging or causing injury to X2.

Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224 | Fax 206.583.0359

77.     Based on the allegations outlined above, X2 is entitled to injunctive relief under RCW 19.86.090 enjoining further violations of the Washington Consumer Protection Act, and an award of actual damages together with the costs of the suit, including a reasonable attorney's fee. In addition, X2 is entitled to an award of treble damages, not to exceed $25,000.00 for each violation of the Consumer Protection Act. These damages are in an amount to be proven at trial.

### Claim VIII – Declaratory Judgment

78.     X2 realleges the allegations set forth in paragraphs 1 - 77 above.

79.     Section 7.1.1 of the Agreement provides that the Agreement and the licenses granted thereunder shall continue until the earlier of December 31, 2016 or termination pursuant to Section 7.

80.     Section 7.3.2 provides that X2 may terminate this Agreement immediately by notice to Bite Tech "if Licensee becomes insolvent."

81.     X2 duly notified Bite Tech that it was terminating the Agreement due to Bite Tech's insolvency by letter dated March 12, 2012.

82.     X2 is entitled to declaratory judgment holding that Bite Tech was insolvent either because its liabilities exceeded the value of its assets, or because it was unable to pay its obligations in the ordinary course as they came due, as of the date of termination.

83.     X2 is further entitled to declaratory judgment holding the Agreement was properly terminated as of March 12, 2012, and all licenses, rights and obligations granted thereunder ceased as of the date of termination.

84.     X2 is further entitled to declaratory judgment holding that Bite Tech and/or i1 have no continuing right to use its name, marks or technology, in regard to mouthpieces or in any other manner, after termination of the Agreement on March 12, 2012.

RSJ  Ryan, Swanson & Cleveland, PLLC
     1201 Third Avenue, Suite 3400
     Seattle, WA 98101-3034
     206.464.4224  |  Fax 206.583.0359

85. X2 is further entitled to declaratory judgment holding that it is entitled to retain the advance royalty payments made to it in the amount of $2,000,000 based upon Bite Tech's various acts of breach, and the absence of any contractual provisions in the Agreement relating to or providing for repayment.

86. X2 is further entitled to declaratory judgment holding that any confidential information or trade secrets disclosed to it by Bite Tech, if any, were disclosed pursuant to Section 6.1 of the Agreement, and do not constitute misappropriation of a Trade Secret under RCW 19.108.

87. X2 is further entitled to declaratory judgment holding that i1 is not a permitted assignee of Bite Tech's rights and obligations under the Agreement, that X2 owes no obligations to i1, and that the assets of i1, which was not incorporated until June 29, 2012, are irrelevant to the question of whether Bite Tech was insolvent as of the date of termination, March 12, 2012.

### Claim IX – Attorneys' Fees

88. X2 realleges the allegations set forth in paragraphs 1 – 87 above.

89. The Technology License Agreement, Section 8.1 provides that the prevailing party shall be entitled to recover its reasonable attorneys' fee and costs incurred in any action "arising out of or related to the Agreement." The claims asserted in this action arise out of or are related to the parties' Agreement entitling X2 to an award of fees and costs incurred in defending against Bite Tech's and/or i1's claims and prosecuting X2's counterclaims.

90. X2 is further entitled to an award of its costs and reasonable attorneys' fees against Bite Tech and i1, jointly and severally, as provided in RCW 19.108.030(2), RCW 19.89.090 and 15 U.S.C. § 1117(a) & (b).

### JURY DEMAND

91. X2 herby requests a trial by jury on all claims so triable.

Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224 | Fax 206.583.0359

# PRAYER FOR RELIEF

WHEREFORE, having fully answered plaintiffs' Complaint and alleged its affirmative defenses and counterclaim, defendant X2 prays for the following relief:

1. Dismissal of plaintiffs' Complaint with prejudice;

2. Declaratory Judgment granting the relief requested in Claim VIII;

3. Judgment against Bite Tech and i1, jointly and severally, for all direct and consequential damages proven at trial based upon Bite Tech's and/or i1's various acts of breach;

4. For preliminary and permanent injunctive relief preventing Bite Tech and i1 from further breaches;

5. Judgment for treble damages pursuant to 15 U.S.C. § 1117(b);

6. Judgment for exemplary damages pursuant to RCW 19.108.030(2);

7. Judgment for treble damages up to $25,000 per occurrence for breach of the Washington Consumer Protection Act, RCW 19.86;

8. Judgment for X2's allowable attorneys' fees and costs; and

9. Such other and further relief as the Court may deem just and equitable.

DATED this 18th day of January, 2013.

RYAN, SWANSON & CLEVELAND, PLLC

By /s/ Robert J. Curran
Robert J. Curran, WSBA #14310
Bryan C. Graff, WSBA #38553
Attorneys for Defendant
1201 Third Avenue, Suite 3400
Seattle, Washington 98101-3034
Telephone: (206) 464-4224
Facsimile: (206) 583-0359
curran@ryanlaw.com
graff@ryanlaw.com



Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224 | Fax 206.583.0359

# CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury under the laws of the State of Washington and the United States of America that on January 18, 2013, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following counsel for plaintiffs:

Paul D. Swanson
David C. Spellman
Tiffany Scott Connors
Lane Powell PC
1420 Fifth Avenue, Suite 4100
Seattle, WA 98101-2338
Phone: 206-223-7392/Fax: 206-223-7107
swansonp@lanepowell.com
spellmand@lanepowell.com
scottt@lanepowell.com

Brett M. Schuman
Howard Holderness
Dennis J. Sinclitico, Jr.
Morgan Lewis Bockius LLP
One Market, Spear Street Tower
San Francisco, CA 94105-1126
Phone: 415-442-1000/Fax: 415-442-1001
bschuman@morganlewis.com
hholderness@morganlewis.com
dsinclitico@morganlewis.com

DATED this 18th day of January, 2013.

/s/Robert J. Curran
Robert J. Curran, WSBA #14310
Bryan C. Graff, WSBA #38553
Attorneys for Defendant
1201 Third Avenue, Suite 3400
Seattle, Washington 98101-3034
Telephone: (206) 464-4224
Facsimile: (206) 583-0359
curran@ryanlaw.com
graff@ryanlaw.com

X2 IMPACT'S SECOND AMENDED ANSWER AND
COUNTERCLAIM - 29
NO. 2:12-cv-01267 RSM



Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224 | Fax 206.583.0359

778665.01