UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| BITE TECH, INC. AND i1 BIOMETRICS, INC., <br><br> Plaintiffs, <br><br> v. <br><br> X2 BIOSYSTEMS, INC., <br><br> Defendant. | CASE NO. C12-1267-RSM <br><br> ORDER ON DEFENDANT'S MOTION TO COMPEL |

## I. INTRODUCTION

This matter is before the Court on Defendant's Fed. R. Civ. P. 37(a) motion to compel documents. Dkt. # 51, 53. For the reasons set forth below, Defendant's motion is GRANTED in part and DENIED in part.

## II. BACKGROUND

In May 2011, Bite Tech, Inc. ("Bite Tech") and X2 Biosystems, Inc. ("X2") entered into a Technology License Agreement ("Agreement") that provided Bite Tech with an exclusive worldwide license on X2's impact sensing technology. Under the Agreement, the parties were to develop an impact sensing mouthguard that would enable real-time monitoring of impact forces for athletes, military troops and others at risk of concussions or similar harms. Based on the terms, Bite Tech completed $2 million advance royalty payments in January 2012. On March

26, 2012, X2 terminated the Agreement, as it provides for termination if Bite Tech becomes insolvent.  Bite Tech has denied the allegations of insolvency and X2 has declined to reimburse Bite Tech's $2 million payment.  Bite Tech, together with i1 Biometrics,[1] brought this action against X2.

     In October 2012, X2 served 44 requests for production of documents, many of which sought information about Bite Tech's financial condition.  Dkt. # 63, p. 4.  Bite Tech produced the documents leading up to the Agreement's termination, but has refused to produce anything beyond that date.  *Id.*  In January 2013, X2 held the deposition of Mark Mastalir, Bite Tech's former Chief Marketing Officer.  Prior to the deposition, Bite Tech produced 155 additional documents following X2's request.  Dkt. # 51, p. 4-5.  It withheld certain documents that consisted of Bite Tech's employee, investor and post-termination information.  Dkt. # 63 at 4.  After Mr. Mastalir testified to the existence of these documents, Bite Tech produced redacted copies to X2 following the deposition.  It has refused to produce the unredacted copies, claiming the information is irrelevant, commercially sensitive, and implicates the privacy rights of non-parties.  Dkt. # 51 at 6-7.  In this motion, X2 seeks to:  (1) compel the unredacted copies of the documents, numbered BT 0000739-84; (2) resume Mr. Mastalir's deposition; and (3) obtain the expenses incurred in bringing this motion.

### III.  DISCUSSION

     "The Federal Rules of Civil Procedure allow for broad discovery in civil actions."  *Wilkerson v. Vollans Auto., Inc.*, No. 08-1501, 2009 WL 1373678, at *1 (W.D. Wash. May 15, 2009).  "Parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense. . ."  Fed. R. Civ. P. 26(b)(1).  Relevant information for purposes of

---

[1] i1 Biometrics is the portion of Bite Tech's business related to the development of impact sensing mouthguards.  Dkt. # 29, 30.

ORDER ON DEFENDANT'S MOTION TO COMPEL - 2

discovery is information "reasonably calculated to lead to the discovery of admissible evidence." *Surfvivor Media Inc. v. Survivor Prods.*, 406 F.3d 625, 635 (9th Cir. 2005). District courts have broad discretion in determining relevancy for discovery purposes. *Id.* (citing *Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002); *see U.S. Fidelity and Guar. Co. v. Lee Investments L.L.C.*, 641 F.3d 1126, 1136 (9th Cir. 2011) ("District courts have wide latitude in controlling discovery, and [their] rulings will not be overturned in the absence of a clear abuse of discretion." (internal quotation and citations omitted)).

A party must produce documents "as they are kept in the usual course of business." Fed. R. Civ. P. 34(b)(2)(E). If a disclosure is not made, the requesting party may move for an order compelling such disclosure, which must include a certification that the movant has made good faith efforts to obtain the requested disclosure or discovery without court action. Fed. R. Civ. P. 37(a)(1). The party who resists discovery has the burden to show that discovery should not be allowed, and has the burden of clarifying, explaining, and supporting objections. *See Gerawan Farming, Inc. v. Prima Bella Produce, Inc.*, No. 10-0148, 2011 WL 2518948, at *2 (E.D. Cal. June 23, 2011). The court should temper any order requiring production of documents "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense. . . ." *Nw. Home Designing, Inc. v. Golden Key Const., Inc.*, No. 11-5289, 2012 WL 470260, at *2 (W.D. Wash. Feb. 10, 2012) (citing Fed. R. Civ. P. 26(c)(1)).

**A. Production of Documents**

    1. <u>Post-termination Financial Information</u>

X2 requests Bite Tech's immediate post-termination plans to conduct a "cash flow" test of insolvency. Dkt. # 72 at 3. The information is purported to show that the Agreement's termination had no negative impact on Bite Tech's revenue since the planned mouthguards were never on the market. *Id.* Bite Tech argues that the redactions consist of forward-looking

business projections, which are not relevant to pre-termination issues. Dkt. # 63 at 9.  Further, since the parties are now direct competitors, the plans are sensitive and confidential.  *Id.*  Since the central issue concerns Bite Tech's financial condition leading up to the Agreement's termination, business information beyond that point is immaterial and not subject to disclosure. *See Rodriguez v. West Publishing Corp.*, No. 06-1096, 2006 WL 2459098, at *3 (W.D. Wash. Aug. 22, 20016) (finding that the existence of a protective order in the underlying litigation is likely insufficient to protect the parties as direct competitors).  However, the Court is also cognizant that Bite Tech's immediate post-Agreement finances may be relevant in determining its allocation of capital prior to termination.  Thus, Bite Tech shall produce the relevant unredacted documents pertaining to its immediate post-termination finances.  Such information includes but is not limited to available capital and outstanding debts or expenses.  Bite Tech, however, is not required to produce information relating to strategy and future business plans independent of the Agreement, which are outside the scope of its relationship with X2.  Bite Tech shall produce unredacted copies of its post-termination finances within <u>seven (7) days</u> of this Order.

    2.  <u>Employee Information</u>

        Basic employment information is not privileged and may be discoverable.  *Barton v. Cascade Regional Blood Services*, No. 06-5644, 2007 WL 2288035, at * 1-2 (W.D. Wash. Aug. 6, 2007) (granting a motion to compel records of current and former employees that include contact information, background and monthly salary in an employment discrimination case). However, "employees have a privacy interest in the personal information regarding them which is retained by their employers." *Green v. Seattle Art Museum*, No. 07-0058, 2007 WL 4561168, at *4 (W.D. Wash. Dec. 21, 2007) (citing *Dawson v. Daly*, 120 Wn.2d 782, 799-800 (1993)). "Washington case law extends that right to further encompass information that an employee

would not ordinarily share with strangers." *Green*, 2007 WL 4561168 at *4 (citing *Richland School Dist. v. Mabton School Dist.*, 111 Wn.App. 377, 392 (2002)). Resolution of a privacy objection requires a balancing of the need for the particular information against the privacy right asserted. *Fryer v. Brown*, No. 04-5481, 2005 WL 1677940, at *6 (W.D. Wash. July 15, 2005) (citing *Perry v. State Farm Fire and Cas. Co.*, 734 F.2d 1141, 1147 (11th Cir. 1984)).

X2 seeks the salary information of Bite Tech's terminated and retained employees post-Agreement, because it demonstrates Bite Tech's inability to meet financial obligations in the ordinary course of business. Dkt. # 72 at 3. Bite Tech argues that disclosure will implicate employee privacy rights and that the information does not concern its ability to honor salary obligations prior to the Agreement's termination. Dkt. # 63 at 10. The Court is not convinced that privacy interests outweigh the relevance of the information in this case. X2 seeks the post-termination salary figures to evaluate Bite Tech's pattern of expenditures and employee downsizing prior to the Agreement's termination. It requests no other personal information regarding the employees. *Cf. Green*, 2007 WL 4561168 at *4 (denying a motion to compel social security and drivers license information for an exhaustive list of non-party employees "absent some compelling justification for their production"). Employee salary data is relevant in determining Bite Tech's ability to sustain the business and whether the layoffs were an independent or direct result of the Agreement's termination. Thus, Bite Tech shall produce all remaining unredacted documents regarding employee salaries within <u>seven (7) days</u> of this Order.

3. <u>Post-termination Investor Information</u>

Bite Tech redacted the identities of its investors from a table that lists the names and respective investments as of the termination date. Dkt. # 63 at 10. X2 seeks the identities of the investors to take discovery on whether they made commitments for additional funding during the

Agreement's duration. Dkt. # 72 at 5. Bite Tech maintains that X2 should be judicially estopped from seeking the same commercially sensitive information that it seeks to preclude from Bite Tech's discovery efforts. Dkt. # 63 at 10. Consistent with the Court's prior rulings,[2] information on the source of investments secured during the course of the Agreement is relevant and discoverable. Simply because the list was compiled after the termination date does not make all the information contained immaterial. Further, Bite Tech's judicial estoppel argument is not applicable, because X2 is not asserting a clearly inconsistent position by seeking Bite Tech's investment information. *See Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 782 (9th Cir. 2001) (judicial estoppel is "an equitable doctrine that precludes a party from gaining an advantage by asserting one position, and then later seeking an advantage by taking a clearly inconsistent position"). X2 has never changed its position regarding disclosure of its own investments, as the basis for its claim centers on Bite Tech's alleged insolvency. Thus, Bite Tech shall produce the relevant, unredacted sources of investment that were acquired during the Agreement within <u>seven (7) days</u> of this Order. Sources of investment secured after the Agreement's termination are not subject to production.

**B. Mr. Mastalir's Deposition**

According to Fed. R. Civ. P. 30(d)(1), "a deposition is limited to 1 day of 7 hours," but the court must allow additional time if needed to fairly examine the deponent or if "any circumstance impedes or delays the examination." The court may also impose an appropriate sanction on a person who impedes, delays, or frustrates the fair examination of the deponent. Fed. R. Civ. P. 30(d)(2). X2 argues that Bite Tech improperly attempted to influence Mr.

---

[2] The Court found that financing information pertaining to the Agreement and the parties' respective obligations is directly relevant to the parties' claims and underlying litigation. *See* Dkt. # 40, pp. 5-6.

Mastalir's deposition testimony by agreeing to pay his attorney's fees and allegedly offering him a consulting position with the company. Dkt. # 53, pp. 3-4. As such, X2 requests to resume Mr. Mastalir's deposition and seeks the associated costs as sanctions against Bite Tech for discovery misconduct. Bite Tech asserts that it is not improper for a former employer to reimburse for legal fees and denies the allegation that the consulting offer was an attempt to influence Mr. Mastalir's testimony. Dkt. # 63 at 7-8. According to Mr. Mastalir, he approached Lawrence Calcano, Bite Tech's Chief Executive Officer, for reimbursement of legal fees. Dkt # 54, Ex. 1. Mr. Calcano agreed to reimburse up to $5000.00 and in a separate conversation offered Mr. Mastalir a consulting position with Bite Tech, which he believes was not intended to influence his testimony. *Id.* While Bite Tech's communications with Mr. Mastalir are questionable, there is no evidence to suggest that it impeded or frustrated the deposition. In fact, it was through Mr. Mastalir's testimony that X2 discovered the nature of Bite Tech's withheld documents. Therefore, the Court denies X2's request for sanctions. However, any further unwarranted attempts to frustrate the discovery process will likely result in sanctions. X2 may resume the remaining two hours left of Mr. Mastalir's deposition.[3]

**C. Attorney Fees**

When a motion to compel is granted in part and denied in part, the court "may, after giving an opportunity to be heard, apportion the reasonable expenses for the motion." Fed. R. Civ. P. 37(a)(5)(c). The responding party is not required to pay expenses if (i) the movant failed to meet and confer, (ii) the responding party's nondisclosure was substantially justified, or (iii) other circumstances make an award unjust. Fed. R. Civ. P. 37(a)(5)(A). "Substantial justification has been defined to mean that the discovery request was the subject of a 'genuine

---

[3] X2 submits that Mr. Mastalir's deposition was ongoing for less than five hours. Dkt. # 72 at 5.

ORDER ON DEFENDANT'S MOTION TO COMPEL - 7

dispute' or that 'reasonable people could differ' as to the appropriateness of the requested discovery." *Bonneville v. Kitsap County*, No. 06-5228, 2007 WL 895873, at *2 (W.D. Wash. March 22, 2007) (citing *Pierce v. Underwood*, 487 U.S. 552, 565 (1988)).  Since the nature of the materials subject to disclosure involves competitively sensitive information collected after the Agreement's termination, Bite Tech was substantially justified in making some of the redactions.  Thus, the Court finds that an award of fees and expenses is not warranted.

## IV.  CONCLUSION

Having reviewed the relevant pleadings, the declarations and exhibits attached thereto, and the remainder of the record, the Court hereby finds and ORDERS:

(1) Defendant's Fed. R. Civ. P. 37(a) motion to compel is granted in part and denied in part.  Bite Tech shall produce the remaining, unredacted documents as set out above within seven (7) days of this Order.

(2) Pursuant to Fed. R. Civ. P. 30(b)(1), X2 may resume the remaining two hours of Mr. Mastalir's deposition.  No sanctions shall be imposed.

(3) No costs or attorney fees shall be awarded pursuant to Fed. R. Civ. P. 37(a)(5)(A).

Dated April 30, 2013.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE